UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAWRENCE JOHN NEVES,<br><br>                     Plaintiff,<br><br>     v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                     Defendant. | **Case No. 1:15-cv-01194-EPG**<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

**I.     INTRODUCTION**

Plaintiff, Lawrence John Neves ("Plaintiff" or "Neves"), seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act ("SSA Act"). The matter is currently before the Court on the parties' briefs, which are referred without oral argument to the undersigned Magistrate Judge.[1]  Upon a review of the administrative record, the Court finds the Administrative Law Judge's decision is not supported by substantial evidence, and the case is remanded to the agency for award of benefits.

**II.    PROCEDURAL BACKGROUND**

Neves filed his application for DIB on February 13, 2012. AR 176-82.[2]  The application

---

[1] All parties have consented to the jurisdiction of the United States Magistrate Judge. (ECF Nos. 6, 8, 10).
[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

alleged a disability onset date of January 13, 2010. AR 176.  His application was denied on May 9, 2012. AR 95-98.  A request for reconsideration was denied on December 11, 2012. AR 103-08.  Neves requested a hearing before an Administrative Law Judge ("ALJ") (AR 110), and the ALJ heard the case on November 7, 2013 (AR 25).  Neves was found not disabled by the ALJ's written decision dated January 24, 2014. AR 12-20.  The Appeals Council denied Neves's appeal, rendering the ALJ's order the final decision of the Commissioner. AR 1-3.  Neves filed the complaint for judicial review in this Court on July 31, 2015, pursuant to 42 U.S.C. § 405(g) to review the final decision of the Commissioner. (ECF No. 1.)

### III. THE DISABILITY DETERMINATION PROCESS

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

> . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. § 404.1502(a)-(f).  The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled.  20 C.F.R. § 404.1502(a)(4).  The ALJ must consider objective medical evidence and opinion testimony. 20 C.F.R. § 404.1527.

Specifically, the ALJ is required to determine:  (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had

medically-determinable "severe" impairments,[3] (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the RFC to perform his or her past relevant work,[4] and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the regional and national level. 20 C.F.R. § 404.1520(a)-(f).

## IV.   THE COMMISSIONER'S DECISION AS TO NEVES

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Neves did not meet the disability standard. AR 20. In particular, the ALJ found that Neves met the insured status requirements of the SSA through December 31, 2015, and had not engaged in substantial gainful activity since January 13, 2010, the onset date. AR 14. Next, the ALJ identified lumbar degenerative disc disease with radiculopathy, lumbar sprain/strain, and obesity as severe impairments. *Id.* The ALJ then determined that Neves does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. AR 14. Based on a review of the entire record, the ALJ determined that Neves had the RFC to:

> [L]ift and carry 20 pounds occasionally, 10 pounds frequently; stand and walk 6 to 8 hours cumulatively, and sit 6 to 8 hours total in an 8-hour workday. In addition, [Neves] can occasionally stoop, crouch, crawl, climb, and kneel. [Neves] is also allowed a sit/stand option (20 CFR 404.1567(b)).

AR 15.

Next, the ALJ determined Neves was unable to perform any past relevant work. AR 18. The ALJ found that Neves was 48 years old on the alleged onset date, which is defined as a younger individual 18-49. AR 19. However, the ALJ noted that Neves subsequently changed age category to closely approaching advanced age (20 C.F.R. § 404.1563). *Id.* The ALJ found that Neves has at least a high school education, and is able to communicate in English (20 C.F.R. §§

---

[3] "Severe" simply means that the impairment significantly limits the claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 416.920(c).

[4] Residual functional capacity captures what a claimant "can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

404.). *Id.* Based on the RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Neves can perform (20 C.F.R. §§ 404.1569, 404.1569(a)). *Id.*

### IV.  ISSUES FOR JUDICIAL REVIEW

Neves challenges the Commissioner's decision, arguing as follows: (1) the ALJ improperly evaluated medical opinion evidence; (2) the ALJ erred in assessing Neves' credibility; and (3) the ALJ inappropriately deviated from the Dictionary of Occupational Titles without securing an explanation from the vocational expert. (ECF No. 13.)  Neves requests that the Court should reverse the Commissioner's decision and award benefits as of his 50th birthday or alternatively, remand for further proceedings. (*Id*. at 15.)  The Commissioner opposes each of these arguments. (ECF No.  15).

### V.  STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. § 405 (g).  Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether: (1) it is supported by substantial evidence; and (2) it applies the correct legal standards.  *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance."  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion."  *Id*.  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  *Id*.

### VII.  DISCUSSION

#### A.  The ALJ Improperly Evaluated the Medical Opinion Evidence

First, Neves contends that the ALJ erred in weighing the medical evidence in the record. (ECF No. 13 at 5-8.)  Particularly, Neves argues that the ALJ improperly rejected the work-

4

related limitations found by his treating physician, Dr. Mangat.[5] While employed as a correctional officer, Neves' suffered a work injury after falling from a chair. AR 288. The subsequent treatment received was connected to a pending Workers' Compensation claim. AR 490.

The Commissioner responds by arguing that the ALJ gave "specific and legitimate" reasons for providing less weight to Dr. Mangat's opinions.

### *1. Legal Standard*

The opinions of treating physicians, examining physicians, and nonexamining physicians are entitled to varying weight in disability determinations. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).

However, the opinions of a treating or examining physician are "not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. *Id.* at 830. While a treating professional's opinion is generally accorded superior weight, if it is contradicted by an examining professional's opinion (when supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995), *citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The regulations require the ALJ to weigh the contradicted treating physician opinion, *Edlund v. Massanari*, 253 F.3d 1152 (9th Cir. 2001), except that the ALJ need not give it any weight if it is conclusory and supported by minimal clinical findings. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating

---

[5] In their briefs, Neves and the Commissioner refer to Dr. Mangat by different names. Neves identifies him as "Dr. Singh", whereas the Commissioner identifies him as "Dr. Mangat." The record shows the doctor's name as "Mangat, Amarjit Singh (M.D.)" AR 490. As "Mangat" appears to be the doctor's surname, the Court will refer to him as "Dr. Mangat" in this order.

physician's conclusory, minimally supported opinion rejected); *see also Magallanes*, 881 F.2d at 751.

The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984). As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Lester*, 81 F.3d at 830.

The opinion of a nonexamining physician may constitute substantial evidence when it is "consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957. Such independent reasons may include laboratory test results or contrary reports from examining physicians, and Plaintiff's testimony when it conflicts with the treating physician's opinion. *Lester*, 81 F.3d at 831 (citing *Magallanes*, 881 F.2d at 751–55).

### *2. Dr. Mangat's Medical Opinion*

On March 2, 2012, Dr. Mangat evaluated Neves and completed a "permanent and stationary report" in connection with Neves' Workers' Compensation case. AR 490-99. Dr. Mangat found a musculoskeletal condition of lower back pain and a neurological condition of parenthesias in Neves' right leg. AR 491. After reviewing prior medical tests and records, Dr. Mangat assessed Neves with spinal stenosis of lumbar region (primary encounter diagnosis), lumbar radiculopathy and low back pain. AR 492. Based on his diagnosis, Dr. Mangat noted the following permanent restrictions:

> [N]o lifting or carrying or pulling or pushing above 25 lbs; No repetitive bending and twisting of back. No prolonged standing or walking more than 30 minutes per hour. He is unable to return to [his] usual and customary duty as correctional officer and since his restrictions are not accommodated, he should be considered [a] qualified injured worker and should have vocational rehabilitation/supplemental [benefits].

*Id*.

### 3. *ALJ's Findings*

The ALJ gave only partial weight to a group of doctors that included Dr. Mangat, which the ALJ referred to as the "Workers' Compensation" doctors. AR 16-17. Specifically, the ALJ provided the following rationale for giving partial weight to Dr. Mangat's opinions:

> On February 15, 2012, the claimant's Workers' Compensation treating physician, Amarjit, Mang[a]t, M.D., declared the claimant permanent and stationary and opined that the claimant was able to lift and carry up to 25 pounds, but no repetitive bending or twisting of the back, and no prolonged standing or walking more than 30 minutes per hour.
>
> I reviewed several opinions by the Workers' Compensation doctors, including Dr. Mang[a]t's opinions regarding the claimant's ability to return to work. Generally, they opined the claimant was able to return to modified work with an ability to lift and carry at least at the light exertional level (Exhibits 7F; 8F; 10F; 11F; 12F, p. 8). Although this is consistent with the medical evidence of record, I can only give partial weight to the Workers' Compensation doctors because their reports were generated as a result of the claimant's Worker[s'] Compensation litigation and do not establish that the claimant is disabled. It is emphasized that the criteria used in such medical-legal reports is not the same as that used in determining disability under the Social Security Act and Regulations. Furthermore, the purpose of these reports is usually to establish causation and apportionment (which are not relevant to the determination of disability under Social Security guidelines). Thus, the conclusions, observations and findings made in such reports are often of limited probative value. Additionally, the Social Security Administration is not bound by any determinations of disability made under the Workers' Compensation system (20 CFR 404.1504).
>
> However, I give some weight to the Workers' Compensation opinions limiting the claimant to no lifting over 25-30 pounds and no repetitive twisting or bending of the back, because they are consistent with the medical evidence of record. For example, diagnostic images of the lumbar spine showed some degenerative changes and disc bulges, but only moderate spinal stenosis and merely mild neuroforaminal narrowing (Exhibits 2F, p. 2; 4F, p. 9). Although there was radiculopathy on the right side, there was no peripheral neuropathy and the claimant is able to ambulate without an assistive device (Exhibits 5F, pp. 1-5; 6F, p. 3).

AR 16-17.

The ALJ proceeded to apply great weight to the opinion of non-examining State agency consulting doctors, Dr. Goodrich (M.D.) and Dr. Nordlicht (M.D.), because "the medical evidence supports them, specifically diagnostic images that showed mild to moderate findings (Exhibits 2F, p. 2; 4F, p.9; 6F, p.3)." AR 17. The findings concerning limitations of the State

agency doctors were ultimately incorporated into the RFC. AR 15, 17.  The ALJ afforded little and some weight to two other "Workers' Compensation" doctors. AR 17-18.

### *4. Analysis*

Neves argues that it was improper for the ALJ to give only partial weight to the opinion of his treating physician, Dr. Mangat.  The parties do not dispute that Dr. Mangat was a treating physician.  In particular, Neves argues that Dr. Mangat's opinion concerning Neves' work-related limitations was based on his treating relationship with Neves and review of prior medical history.  Thus, the ALJ was required to give specific and legitimate reasons that are supported by substantial evidence in the record for rejecting Dr. Mangat's opinion.  However, Neves asserts that the ALJ failed to meet that burden when she improperly discredited the findings of Dr. Mangat solely because the findings were made in the context of treatment received in connection with a pending Workers' Compensation case.

The Commissioner responds by arguing that "[t]he ALJ gave partial weight to Dr. Mangat's opinion because it was inconsistent with other medical opinions in the record, the treatment record as a whole including diagnostic imaging and clinical findings, and was issued in connection with Plaintiff's workers compensation claim." (ECF No. 15 at 13.)   Neves points out in his reply, however, that this explanation appears to be a case of "*post hoc* rationalization" by the Commissioner. (ECF No. 16 at 3).  The Court must review the actual reasons provided by the ALJ rather than the reasons provided by the Commissioner in response to the opening brief. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.") (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

The ALJ did not indicate that she was providing less weight to Dr. Mangat's opinion concerning limitations because "it was inconsistent with other medical opinions in the record" and inconsistent with "the treatment record as a whole including diagnostic imaging and clinical findings." AR 16-17.  Instead, it appears that the ALJ lumped the opinions of several doctors, including Dr. Mangat, into a group of opinions from "Workers' Compensation doctors" and then proceeded to give less weight to the group of opinions because they were generated in the context

of a Workers' Compensation case. *Id.* Thus, the issue here is whether or not discrediting Dr. Mangat's opinion concerning work-related limitations because it was generated in the context of a Workers' Compensation case was a specific and legitimate reason for rejecting the opinion of a treating physician.

It is established law that an ALJ may properly reject the "ultimate conclusions" of disability made in the context of another type of proceeding such as a Workers' Compensation case. 20 C.F.R. § 404.1504 ("A decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled…"); 20 C.F.R. § 416.927(e)(2)(i) (providing that an ALJ "must consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence, except for the ultimate determination about whether you are disabled…"). *See also Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985) ("Conclusory opinions by medical experts regarding the ultimate question of disability are not binding on the ALJ") (citing 20 C.F.R. § 416.927). However, Neves is not urging the Court to adopt Dr. Mangat's "ultimate conclusions" concerning his ability to perform work. Rather, he is arguing that Dr. Mangat made findings during his treatment relationship concerning Neves' work-related limitations, and the ALJ did not give specific and legitimate reasons for rejecting those limitations.

In its response, the Commissioner attempts to provide some support for the ALJ's statements that the criteria used in Workers' Compensation "medical-legal reports" is not equivalent to medical evidence generated in a Social Security proceeding. (ECF No. 15 at 10-11.) Citing no authority other than the above regulation stating that the ALJ may reject the ultimate conclusion as to disability made in another proceeding, the ALJ found that "the conclusions, observations and findings made in such reports are often of limited probative value" because "the purpose of these reports is usually to establish causation and apportionment (which are not relevant to the determination of disability under Social Security guidelines)." AR 17.

*To be very clear*, rejecting the ultimate conclusion concerning disability and rejecting findings concerning work-related limitations are two vastly different propositions that should not

be conflated.

The Commissioner cites *Marci v. Chater* for the principle that the ALJ is not bound to accept a doctor's findings made in a "medical-legal" report generated in Workers' Compensation proceedings. 93 F.3d 540 (9th Cir. 1996) (citing *Desrosiers v. Secretary of Health & Human Serv.*, 846 F.2d 573, 576 (9th Cir. 1988)). In *Marci*, a claimant in a Social Security case was reported by a doctor to be disabled according to Category "D" of the California Guidelines for Work Capacity under California Workers' Compensation law, which represents a "Disability Precluding Heavy Lifting, Repeated Bending and Stooping" and "contemplates the individual has lost approximately half of his pre-injury capacity for lifting, bending and stooping." *Id*. at 543 (citation omitted). In analyzing the application of the Workers' Compensation finding, the Ninth Circuit in *Marci* cited its decision in *Desrosiers* for support that the "California Guidelines for Work Capacity are not conclusive in a social security case." *Id*. at 543-44 (citing *Desrosiers*, 846 F.2d at 576). However, the ALJ was "entitled to draw inferences logically flowing from the evidence." *Id*. at 544 (citing *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). After translating the weight limitation in the Workers' Compensation case to the Social Security case, the *Marci* court held that Workers' Compensation weight limitation finding actually provided support for the RFC finding of the ALJ in the Social Security case. *See id*.

The Ninth Circuit's decisions in *Marci* and *Desrosiers* do not support the ALJ's stated reason for discrediting Dr. Mangat's findings concerning work-related limitations. The court in *Marci* did not reject the limitations found in the claimant's Workers' Compensation case. *See id*. Instead, the court found it appropriate that the ALJ attempt to translate the evidence concerning limitations for application in the Social Security case. *See id*. Furthermore, the *Desrosiers* decision merely stands for the proposition that the terminology used in a Workers' Compensation case is not always directly applicable to a Social Security case. *See Desrosiers*, 846 F.2d at 576 (providing that Workers' Compensation finding that claimant was only incapable of "heavy" work was not in conflict with treating physician's conclusion that claimant was disabled in a Social Security case because Workers' Compensation case was not required to examine whether the claimant was capable of performing "light," semi-sedentary," or "sedentary" work).

However, the *Desrosiers* court suggests, like *Marci*, that the ALJ should attempt to translate the evidence from the Workers' Compensation case into the Social Security case. *See id*.

Thus, contrary to the Commissioner's argument in this case, the ALJ's reason for applying less weight to the opinion of a treating physician concerning work-related limitations --because the limitations were generated in the context of a Workers' Compensation case-- does not constitute a "specific and legitimate" reason supported by substantial evidence in the record. *See Booth v. Barnhart*, 181 F. Supp. 2d 1099, 1105-06 (C.D. Cal. 2002) (providing that ALJ may not disregard a physician's medical opinion simply because it was initially elicited in a state workers' compensation proceeding, and ALJ must translate terms of art contained in such medical opinions into the corresponding Social Security terminology in order to accurately assess the implications of those opinions for the Social Security disability determination) (collecting cases). Accordingly, the Court finds that the ALJ erred in failing to give specific and legitimate reasons for rejecting a treating doctor's opinion concerning work-related limitations.

### B.  The ALJ's Error Was Not Harmless

The Court must next determine whether the ALJ's error in weighing the medical evidence had an impact on the ultimate conclusion concerning disability. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (ALJ's error may be considered "harmless" where "the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion.")

The Ninth Circuit has stated the following with respect to the fifth step of the sequential analysis:

> At the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(v); *Lockwood v. Comm'r. of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  The ALJ may meet his burden at step five by asking a vocational expert a hypothetical question based on medical assumptions supported by substantial evidence in the record and reflecting all the claimant's limitations, both physical and mental, supported by the record. *See Valentine v. Comm'r. of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009); *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002);  *Desrosiers v. Sec'y. of Health & Human Servs.*, 846 F.2d 573, 578 (9th Cir. 1988) (Pregerson, J., concurring) ("The ALJ's depiction of the

claimant's disability must be accurate, detailed, and supported by the medical record."). "If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir.1993) (internal quotation marks and citation omitted).

*Hill v. Astrue,* 698 F.3d 1153, 1162 (9th Cir. 2012).

Here, the ALJ presented a series of hypotheticals to the vocational expert ("VE"), Judith Najarian. AR 46-49.  The ALJ testified that her testimony was consistent with the DOT. AR 51. In the first hypothetical, the ALJ assumed a hypothetical person of Neves' age, education, and work background with limitations of "lift and carry 20 pounds occasionally, 10 pounds frequently; sit, stand, or walk six to eight [hours/day] with occasional stoop, crouch, crawl, climb … and … frequently balance and kneel." AR 47.  The VE testified that the hypothetical person could not perform past work as a correctional officer, but could perform some jobs in California and the national economy. AR 48.

In the second hypothetical, the ALJ kept the same lift/carry and sit/stand/walk limitations as the first hypothetical, but changed the "posturals" (stoop/crouch/crawl/climb/balance/kneel) from "frequently" to "occasional."  *Id*.  The ALJ also added a sit/stand option. *Id*.  The VE testified that the hypothetical person would be able to perform the jobs of cashier II, storage-facility rental clerk, and mail sorter. AR 48-49.  The ALJ would ultimately adopt the RFC in this second hypothetical and conclude that jobs existed in significant numbers at step-five of the sequential analysis, resulting in a conclusion that Neves was not disabled.[6] AR 15, 20.

Neves' counsel also proposed a series of hypotheticals to the VE at the ALJ hearing. AR 49-51.  Of most importance, Neves' counsel asked the VE to assume that a hypothetical person would have limitations of no lifting, carrying or pulling more than 25 pounds; no repetitive bending and twisting; and no prolonged standing and walking of more than 30 minutes per hour. AR 50. This hypothetical incorporated the work-related limitations found by Dr. Mangat. AR

---

[6] Of lesser significance here, the third hypothetical proposed by the ALJ kept the limitations in the second and changed the sit/stand to "changing position every 15 minutes." AR 49.  The VE opined that there would be no work for Neves under that scenario because it "would affect productivity too greatly." *Id*.  Further, the ALJ presented a fourth hypothetical assuming the same hypothetical as the second, but added that the person would need "an additional two to four breaks, 30 minutes." *Id*.  Again, the VE testified that there would be no work. *Id*.

492. The VE testified that the person would not be able to return to prior work as correctional officer. *Id*. The VE further testified that the person would only be able to perform sedentary work. AR 51.

Neves was born on November 28, 1961, and was 48 years old on the alleged onset date (January 13, 2010). AR 19. Prior to his 50th birthday, a RFC limiting him to sedentary work would not necessarily render him disabled at step five. *See Tackett v. Apfel*, 180 F.3d 1094, 1103-044 (9th Cir. 1999) (providing that prior to a claimant's 50th birthday, the grids in the Social Security regulations define a claimant as a "younger individual" capable of performing sedentary work). However, following his 50th birthday on November 28, 2011, Neves is considered "an individual approaching advanced age" and the grids direct a finding of "disabled." *See id*. (citing 20 C.F.R. pt. 404, subpt. P, app. 2, rules 202.12, 202.21).

Therefore, if Dr. Mangat's medical opinion concerning Neves' work-related limitations was credited-as-true, the Commissioner would fail to meet its burden at step-five of the sequential disability determination process. Because the conclusion at step-five would change depending upon whether the ALJ incorporated the work-related limitations of Dr. Mangat, the Court concludes that the ALJ's error in weighing the medical evidence was not harmless. *See Stout*, 454 F.3d at 1055.

**VI.   REMAND FOR AWARD OF BENEFITS**

Given the above, the Court must determine whether this action should be remanded to the Commissioner with instructions to immediately award benefits or whether this action should be remanded to this Commissioner for further administrative proceedings. Remand for further proceedings is appropriate when an evaluation of the record as a whole creates serious doubt as to whether the claimant is in fact disabled. *Garrison v. Colvin,* 759 F. 3d 995, 1020 (9th Cir. 2014). Conversely, a Court should remand for an award of benefits when: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Id*. at 1020.

For the reasons discussed above, remand for an award of benefits is appropriate here because all three conditions are satisfied. As specifically requested, benefits shall be awarded from his 50th birthday, November 28, 2011, and not from the alleged onset date.[7] (ECF No. 13 at 8.)

## VII. CONCLUSION

Based on the foregoing, it is ORDERED that:

1. Neves's appeal from the administrative decision of the Commissioner of Social Security is GRANTED.
2. The ALJ's decision that Neves is not disabled is not supported by substantial evidence in the record as a whole.
3. This case is REMANDED to the agency for award of benefits consistent with this order.
4. The Clerk of the Court be DIRECTED to enter judgement in favor of Plaintiff, LAWRENCE JOHN NEVES, and against Defendant, COMMISSIONER OF SOCIAL SECURITY.

IT IS SO ORDERED.

Dated:  **March 20, 2017**                     /s/ Erica P. Grosjean
                                                              UNITED STATES MAGISTRATE JUDGE

---

[7] The Court does not reach the merits of the other two grounds presented Neves: (2) the ALJ erred in assessing Neves' credibility; and (3) the ALJ inappropriately deviated from the Dictionary of Occupational Titles without securing an explanation from the vocational expert.